672 S.E.2d 215

**APOLLO CIVIC THEATRE, INC.,**
**Petitioner Below, Appellant,**

v.

**STATE TAX COMMISSIONER OF**
**WEST VIRGINIA, Respondent**
**Below, Appellee.**

No. 33889.

Supreme Court of Appeals of
West Virginia.

Submitted: Oct. 7, 2008.

Decided: Dec. 10, 2008.

Michael E. Caryl, Esq., Bowles Rice McDavid Graff & Love, Martinsburg, for Appellant.

Darrell V. McGraw, Jr., Attorney General, L. Wayne Williams, Assistant Attorney General, Charleston, for Appellee.

STARCHER, J.[1]

In this appeal from the Circuit Court of Berkeley County, a taxpayer—a local civic theater organization—seeks review of a circuit court order sustaining assessments by the State Tax Commissioner against the taxpayer for failing to pay certain state consum-

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008 and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

er sales taxes and certain state use taxes. As a non-profit corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, the taxpayer asserts that the circuit court erred because the taxpayer is not obligated under state law to pay the assessed use tax or consumers sales tax.

As set forth below, we reverse the circuit court's order.

## I.

### Facts & Background

The taxpayer and appellant in this case is Apollo Civic Theatre, Inc., a community theater group that (according to its constitution and by-laws) is meant to foster, promote, increase and develop amateur dramatics for the enjoyment and education of the general public. The taxpayer—comprised of dues-paying members with an interest in theatrical presentations—routinely stages live theatrical productions, and charges admission to each event. The admission prices for stage productions ranged from $5.00 to $12.00 for the general public.

The parties agree, however, that the taxpayer does not bar membership if an otherwise qualified individual lacks the ability to pay dues. Likewise, discounted admission prices were charged for school children to attend daytime performances and for senior citizens. Individuals with a stated financial need could attend performances for free. Complimentary and reduced-price tickets were often provided by the taxpayer to a local senior center, to school English and theater departments, and to patients at a local hospital.

The taxpayer purchases some of the goods, services and equipment that it uses to stage productions on the open market. The taxpayer also receives tangible property donations, such as costumes and furniture, paint, plumbing and electrical equipment, posters, linen and rope, office equipment and supplies, and lumber. Additionally, the taxpayer receives substantial non-cash donations of

time, services and supplies from unpaid individuals in the community. Many individuals volunteer their services in the background to enable the taxpayer to present live performances, services such as costume tailoring, make-up artistry, hair styling, set designing and construction, lighting and sound design, electrical wiring, publicizing events, working as box office agents, ushers, or concession stand operators. The actors and producers also volunteer their time to the taxpayer.

From 2001 to 2003, the taxpayer did not charge, collect or remit any taxes on the sale of tickets for admission to the shows it staged.[2] Furthermore, from 1999 to 2003, the appellant did not pay taxes on any purchases of goods and services used to stage its productions.

On April 9, 2004, following an audit, the appellee State Tax Commissioner issued an assessment finding that the appellant taxpayer had not paid two taxes. First, the Commissioner issued a Sales Tax Assessment ordering the taxpayer to pay $11,778.00 in tax (and an additional $1,511.00 in interest) on sales of tickets for admission. Second, the Commissioner issued a Use Tax Assessment requiring the taxpayer to pay $4,039.00 in tax (plus an additional $1,003.00 in interest) on goods and services purchased for use in the conduct of the taxpayer's operations.

The taxpayer timely filed petitions for reassessment with the West Virginia Office of Tax Appeals ("OTA") challenging both the Sales Tax Assessment and the Use Tax Assessment.

As to the Sales Tax Assessment, the OTA noted that the taxpayer was exempt from collecting a tax on sales on admission tickets so long as those sales were, in part, geared toward "improving health and fitness." *See* *W.Va.Code,* 11–15–11(b)(1) [1992].[3] The OTA, however, agreed with the Commissioner's regulation that the term "health and fitness" means "physical health and fitness of individuals but does not include mental health and fitness or spiritual health and fitness." 110 C.S.R. 15D.3.7.

---

**2.** The taxpayer ran a concession stand, and did collect and remit consumer sales tax on concession stand sales.

**3.** We discuss this statute in greater detail in Section III.A. of the discussion.

As to the Use Tax Assessment, the OTA concluded that an organization like the taxpayer was entitled to avoid paying a use tax on purchases if more than half of its support came from "gifts, grants, [or] direct or indirect charitable contributions" such as "the value of services or facilities ... furnished by a governmental unit ... to an organization without charge." *W.Va.Code*, 11–15–9(a)(6)(C) and –9(a)(6)(F)(i)(VI) [2007].[4] While the parties agreed that more than half of the taxpayer's support included donated services and goods from members of the community, the OTA found that the taxpayer could not rely on the statutory exemption to avoid paying the use tax because those contributions did not come from a governmental unit.

Accordingly, on June 1, 2006, the Office of Tax Appeals affirmed both assessments.

The taxpayer then appealed to the circuit court. In a final order dated August 7, 2007, the circuit court upheld the Commissioner's assessments against the taxpayer.

The taxpayer now appeals the circuit court's order.

## II.

### *Standard of Review*

■ "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995)

## III.

### *Discussion*

The taxpayer asserts that the Commissioner erred in issuing assessments requiring the taxpayer to collect and remit consumer sales and service tax on ticket sales for admission; and requiring the taxpayer to pay use tax on goods and services purchased or donated for use in the taxpayer's operations.

### A.

### *Consumer sales and service tax*

■■ The taxpayer's first argument concerns the consumer sales and service tax.

West Virginia law requires certain vendors to collect and then pay to the Commissioner a tax on the sale of certain services. *W.Va. Code*, 11–15–3(a) [2003] states, in part:

For the privilege of selling tangible personal property or custom software and for the privilege of furnishing certain selected services ... the vendor shall collect from the purchaser the tax as provided under this article ... and shall pay the amount of tax to the tax commissioner[.]

*W.Va.Code*, 11–15–2(18) [2008] defines "service" and "selected service" as "all nonprofessional activities engaged in for other persons for a consideration, which involve the rendering of a service as distinguished from the sale of tangible personal property[.]" The parties agree that, as a general matter, a theatrical production is a service that requires a vendor to collect the sales tax on any tickets sold for admission.

The taxpayer in this case, however, argues that it is statutorily exempt from having to collect sales tax because it is a charitable nonprofit organization that is exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code. The taxpayer relies upon *W.Va.Code*, 11–15–11(a) and (b), which provides the following exemption (with emphasis added):

(a) Sales of taxable services by a corporation or organization that are exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, and that meet the requirements set forth in subsection (b) of this section, are exempt from the tax imposed by this article ...

(b) The exemption set forth in this section applies only to those corporations or organizations meeting the following criteria:

(1) The corporation or organization is organized and operated primarily for charitable or educational purposes and its activities and programs contribute

---

**4.** We discuss this statute in greater detail in Section III.B. of the discussion.

importantly to *promoting the general welfare of youth, families and the aged, improving health and fitness and providing recreational opportunities to the public;*

(2) The corporation or organization offers membership or participation in its programs and activities to the general public and charges fees or dues which make its programs and activities accessible by a reasonable cross-section of the community; and

(3) The corporation or organization offers financial assistance on a regular and on-going basis to individuals unable to afford the organization's membership dues or fees.

▮▮▮ "To prevent evasion, it is presumed that all sales and services are subject to the [consumer sales] tax until the contrary is clearly established." *W.Va.Code*, 11–15–6(b) [2003]. A taxpayer seeking an exemption from the consumer sales tax bears the burden of proof. "It is incumbent upon a person who claims his property is exempt from taxation to show that such property clearly falls within the terms of the exemption; and if any doubt arises as to the exemption, that doubt must be resolved against the one claiming it." Syllabus Point 2, in part, *In re Hillcrest Mem. Gardens, Inc.*, 146 W.Va. 337, 119 S.E.2d 753 (1961).

The Commissioner concedes that the taxpayer in this case meets the qualifications of *W.Va.Code*, 11–15–11(a) and (b)(2) and (b)(3).[5] The Commissioner argues, however, that the taxpayer does not meet the requirements of *W.Va.Code*, 11–15–11(b)(1) because the taxpayer's activities are not geared toward "improving health and fitness" of the public. The Commissioner has enacted regulations interpreting "health and fitness" and given the phrase the following definition:

"Health and fitness" means physical health and fitness of individuals but does not include mental health and fitness or spiritual health and fitness.

110 C.S.R. § 15D.3.7. The Commissioner therefore argues that because the Apollo Civic Theatre's productions do not improve the "physical health and fitness of individuals" who attend performances, then the organization may not rely upon the exemption from consumer sales tax found in *W.Va.Code*, 11–15–11.

The taxpayer, however, asserts that the term "health and fitness" contained in *W.Va. Code*, 11–15–11(b)(1) is ambiguous, and asserts that the term should be read to include the mental and spiritual health and fitness that can result from attending a theatrical production. We agree.

▮▮▮ Generally speaking, a rule promulgated by the Commissioner interpreting a statute is entitled to considerable deference by this Court. As we stated in *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. at 583, 466 S.E.2d at 434, while "interpretive rules do not have the force of law nor are they irrevocably binding on the agency or the court," nonetheless, "they are entitled to some deference from the courts[.]" While the Commissioner concedes that this Court interprets a statute *de novo*, the Court has said that "in this sphere we are not entirely free to substitute our own judgment or that of an administrative agency, as '[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.'" *CB&T Operations Co., Inc. v. Tax Comm'r*, 211 W.Va. 198, 202, 564 S.E.2d 408, 412 (2002) (*quoting* Syllabus Point 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp., Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981)). Thus, "a construction given a statute by the officers charged with the duty of executing it ought not to be

---

**5.** Stated more broadly, the Commissioner concedes that the Apollo Civic Theatre is an organization exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code; that the organization is organized and operated primarily for charitable or educational performances; that its programs contribute importantly to promoting the general welfare of youth, families and the aged; that the organization provides recreational opportunities to the public; that the organization offers membership and/or participation to the general public; that the organization charges fees and/or dues which make its programs and activities accessible by a reasonable cross-section of the community; and the organization offers financial assistance to individuals unable to afford the organization's membership dues or fees.

discarded without cogent reason." *State ex rel. Daily Gazette Co. v. County Court,* 137 W.Va. 127, 132, 70 S.E.2d 260, 262 (1952). In other words, "[a]n inquiring court—even a court empowered to conduct *de novo* review—must examine a regulatory interpretation of a statute by standards that include appropriate deference to agency expertise and discretion." *Appalachian Power Co.,* 195 W.Va. at 582, 466 S.E.2d at 433.

However, the Commissioner's interpretation of a word in a statute must conform to the Legislature's intent in enacting the statute. Interpretive rules by an agency "are entitled on judicial review only to the weight that their inherent persuasiveness commands." *Appalachian Power Co.,* 195 W.Va. at 583, 466 S.E.2d at 434. As a rule of statutory construction, we have repeatedly held that:

> Any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

Syllabus Point 4, *Maikotter v. University of W.Va. Bd. of Trustees,* 206 W.Va. 691, 527 S.E.2d 802 (1999). We held similarly in Syllabus Point 3 of *Rowe v. W.Va. Dept. of Corrections,* 170 W.Va. 230, 292 S.E.2d 650 (1982) that:

> It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority.

*See also, Anderson & Anderson Contractors, Inc. v. Latimer,* 162 W.Va. 803, 807–08, 257 S.E.2d 878, 881 (1979) ("Although an agency may have power to promulgate rules and regulations, the rules and regulations must be reasonable and conform to the laws enacted by the Legislature."). In sum, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syllabus Point 1, *Consumer Advocate Div'n v. Public Service Comm'n,* 182 W.Va. 152, 386 S.E.2d 650 (1989). "The judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute." Syllabus Point 5, *CNG Transmission Corp. v. Craig,* 211 W.Va. 170, 564 S.E.2d 167 (2002).

It is axiomatic that, "[i]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syllabus Point 1, *Miners in General Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941). *In accord,* Syllabus Point 6, in part, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning."). Because the phrase "health and fitness" is not defined in *W.Va.Code,* 11–15–11(b)(1), we must give the phrase its common, ordinary and accepted meaning.

"Health" has been defined as "state of being well in body *or* mind" and a "person's mental or physical condition;"[6] "spiritual, moral, or mental soundness or well-being;"[7] and "the general condition of the body or mind with reference to soundness or vigor."[8] The word "fitness" has been defined to refer simply to a person's "health,"[9] but a more rounded definition suggests it means a person is "in good health, perfectly well" or is "well adapted or suited to the conditions or

---

6. *Oxford Desk Dictionary and Thesaurus, American Edition* (1997).

7. VII *Oxford English Dictionary* 53 (Second Edition, 1989).

8. *Random House Webster's Unabridged Dictionary* 882 (Second Edition, 1998).

9. *Random House Webster's Unabridged Dictionary* 726 (Second Edition, 1998).

circumstances." [10]

With these common, ordinary and accepted definitions of "health" and "fitness" in mind, it is clear that the Commissioner's narrow interpretation of *W.Va.Code*, 11–15–11(b)(1) is plainly wrong. The Legislature's use of the phrase "health and fitness" in the statute evinces an intent to exempt from collecting sales tax those organizations with programs that improve the soundness and well-being of both the body *and* the mind. We are therefore obliged to reject the Commissioner's interpretative rule because it is contrary to the clear language of *W.Va.Code*, 11–15–11(b)(1).

The record in the instant case clearly establishes that the activities and programs of the taxpayer, the Apollo Civic Theatre, contribute importantly to improving health and fitness and providing recreational opportunities to those members of the public who purchased admission tickets. Accordingly, we hold that the terms "health and fitness" found in *W.Va.Code*, 11–15–11(b)(1) are not restricted to physical health and fitness of individuals, but may also include mental health and fitness and/or spiritual health and fitness. Furthermore, we conclude that the taxpayer in the instant case could rely upon the exemption from consumer sales tax found in *W.Va.Code*, 11–15–11. The circuit court therefore erred in holding that the taxpayer was required to collect and remit to the Commissioner consumer sales tax on tickets sold for admission to the taxpayer's productions.

### B.

### *Use tax*

▇▇ The Tax Commissioner is authorized to collect a "use tax" on tangible personal property, custom software and certain services that are used by a person in this state (unless the person paid a sales tax when the good was purchased). *See W.Va.Code*, 11–15A–2 [2003]. The various exemptions from paying the consumer sales tax are also applicable to the use tax. *See W.Va.Code*, 11–15A–3(3) [2003].

In the instant case, the Tax Commissioner seeks to collect use taxes for the taxpayer's purchases of supplies and services consumed in its operations from 1999 until 2003.

The taxpayer, however, asserts that it is exempt from paying use taxes because it is a charitable organization that receives a majority of its support from charitable donations—specifically, donations of time and services from members of the community. The taxpayer relies upon *W.Va.Code*, 11–15–9(a)(6)(C), which states in pertinent part:

The following sales of tangible personal property and services are exempt as provided in this subsection: . . .

(6) Sales of tangible personal property or services to a corporation or organization . . . which is exempt from federal income taxes under Section 501(c)(3) or (c)(4) of the Internal Revenue Code of 1986, as amended, and which is:

(C) A corporation or organization which annually receives more than one half of its support from any combination of gifts, grants, direct or indirect charitable contributions or membership fees[.]

The Tax Commissioner argues, however, that the Legislature has given the term "support" in *W.Va.Code*, 11–15–9(a)(6)(C) a very narrow definition, one that excludes from consideration support that is derived from donations of time and services by members of the community. The Tax Commissioner relies upon *W.Va.Code*, 11–15–9(a)(6)(F)(i), which states in pertinent part:

(i) The term "support" includes, but is not limited to:

(I) Gifts, grants, contributions or membership fees;

(II) Gross receipts from fundraisers which include receipts from admissions, sales of merchandise, performance of services or furnishing of facilities in any activity which is not an unrelated trade or business within the meaning of Section 513 of the Internal Revenue Code of 1986, as amended;

---

**10.** *See* "Fit," v. *Oxford English Dictionary* 974 (Second Edition, 1989). "Fitness" is defined as "the quality or state of being fit or suitable." *Id.* at 976.

(III) Net income from unrelated business activities, whether or not the activities are carried on regularly as a trade or business;

(IV) Gross investment income as defined in Section 509(e) of the Internal Revenue Code of 1986, as amended;

(V) Tax revenues levied for the benefit of a corporation or organization either paid to or expended on behalf of the organization; and

(VI) The value of services or facilities (exclusive of services or facilities generally furnished to the public without charge) furnished by a governmental unit referred to in Section 170(c)(1) of the Internal Revenue Code of 1986, as amended, to an organization without charge. This term does not include any gain from the sale or other disposition of property which would be considered as gain from the sale or exchange of a capital asset or the value of an exemption from any federal, state or local tax or any similar benefit[.] [11]

As we understand it, it appears that the Tax Commissioner is arguing that only "services . . . furnished by a governmental unit . . . without charge" are the types of services that may be counted toward the taxpayer's support to determine whether the taxpayer is exempt from paying use taxes. In other words, by excluding from the calculation the services furnished to the taxpayer without charge by members of the community, the Tax Commissioner is arguing that the taxpayer does not receive more than half of its "support" from gifts, grants, direct or indirect charitable contributions or membership fees.

We have carefully considered the Commissioner's argument, and reject that interpretation because it unfairly and improperly impairs the Legislature's intent behind the enactment of *W.Va.Code*, 11-15-9(a)(6).

First and foremost, the definition of "support" chosen by the Legislature is not narrow, as the Commissioner contends, but is rather quite broad. *W.Va.Code*, 11-15-9(a)(6)(F)(i) says that "[t]he term 'support' *includes, but is not limited to*" the six factors listed. This Court has found that by using the "includes, but is not limited to" language, the Legislature intended to assign a broad meaning to the term "support." *Davis Memorial Hosp. v. West Virginia State Tax Com'r*, 222 W.Va. 677, 684, 671 S.E.2d 682, 689 (2008). In this regard, this Court has recognized that "[t]he term 'includ[es]' in a statute is to be dealt with as a word of enlargement and this is especially so where . . . such word is followed by 'but not limited to' the illustrations given." *State Human Rights Comm'n v. Pauley*, 158 W.Va. 495, 501, 212 S.E.2d 77, 80 (1975).

The expansive nature of the "includes, but is not limited to" language in the definition of "support" is further bolstered by the Legislature's own definition of "includes" in the tax code. *W.Va.Code*, 11-15-2(9) [2003] states:

"Includes" and "including," when used in a definition contained in this article, does not exclude other things otherwise within the meaning of the term being defined.

Additionally, when tax legislation is clearly intended to create a socioeconomic benefit, we have concluded that such legislation should be given a broad construction to achieve the beneficial and remedial purposes it is intended to promote. *See, e.g., Andy Bros. Tire Co., Inc. v. West Virginia State Tax Com'r*, 160 W.Va. 144, 147, 233 S.E.2d 134, 136 (1977) ("This court has always attempted to liberally construe socioeconomic legislation to effectuate recited legislative intent."); *Brockway Glass Co. v. Caryl*, 183 W.Va. 122, 124-25, 394 S.E.2d 524, 526-27 (1990) (liberally construing tax credit legislation in favor of the taxpayer).

---

11. *W.Va.Code*, 11-15-9(a)(6)(F) also contains the following definitions of "charitable contribution" and "membership fee":

(ii) The term "charitable contribution" means a contribution or gift to or for the use of a corporation or organization, described in Section 170(c)(2) of the Internal Revenue Code of 1986, as amended; and
(iii) The term "membership fee" does not include any amounts paid for tangible personal property or specific services rendered to members by the corporation or organization[.]

We therefore conclude that the Legislature intended that an expansive reading of *W.Va. Code*, 11–15–9(a)(6)(F), permits a charitable organization to include donations of services by members of the community as "support." The taxpayer in the instant case was clearly entitled to include donations of time and services in putting on its productions as "support" in showing an entitlement to the exemption from paying use taxes. We find that the circuit court erred in ruling otherwise.[12]

### IV.

#### *Conclusion*

The circuit court's order sustaining the Tax Commissioner's assessment of consumer sales taxes and use taxes against the taxpayer was in error. Accordingly, the circuit court's order must be reversed.

Reversed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.

---

**12.** The Commissioner also contends that interest earned on a bequest to the taxpayer from an estate is not support to the taxpayer exempt from the consumer sales tax. We decline to consider this argument, and simply conclude that on the existing record the Commissioner erred in attempting to impose such an assessment.