695 S.E.2d 185

David KOKOCHAK, Petitioner
Below, Appellee,

v.

The WEST VIRGINIA STATE LOTTERY
COMMISSION, a State Agency,
Respondent Below, Appellant.

Parkersburg BPO Elks Lodge # 198,
Petitioner Below, Appellant,

v.

The West Virginia State Lottery
Commission, Respondent
Below, Appellee.

Nos. 35299, 35300.

Supreme Court of Appeals of
West Virginia.

Submitted April 13, 2010.

Decided April 26, 2010.

Dissenting Opinion of Justice
Benjamin July 12, 2010.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Assistant Attorney General, Charleston, WV, for the Appellant in Case Number 35299.

William B. Richardson, Jr., Richardson & Campbell Lawyers, Parkersburg, WV, for the Appellant in Case Number 35300.

Michael Edward Nogay, Sellitti, Nogay & McCune, PLLC, Weirton, WV, for the Appellee in Case Number 35299.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Assistant Attorney General, Charleston, WV, for the Appellee in Case Number 35300.

DAVIS, Chief Justice:

These consolidated cases involve the validity of § 179–7–2.2 (2008) of the West Virginia Code of State Rules. In Case Number 35299, the appellant herein and defendant

below, the West Virginia State Lottery Commission (hereinafter "the Commission"), appeals from an order entered August 4, 2009, by the Circuit Court of Kanawha County. By that order, the circuit court found that W. Va.C.S.R. § 179–7–2.2 is an invalid legislative rule. In Case Number 35300, the appellant herein and petitioner below, the Parkersburg BPO Elks Lodge # 198 (hereinafter "the Elks"), appeals from an order entered June 3, 2009, by the Circuit Court of Kanawha County. By that order, the circuit court affirmed the Commission's decision finding the subject rule to be a valid interpretive rule. On appeal to this Court, the parties differ as to whether § 179–7–2.2, which purports to interpret W. Va.Code § 29–22B–1201(a) (2001) (Repl.Vol.2008) by defining the phrase "licensed limited video lottery location approved by the commission," is a valid interpretive rule or whether it is an invalid legislative rule. Upon a review of the parties' arguments, the record presented for appellate consideration, and the pertinent authorities, we conclude that W. Va.C.S.R. § 179–7–2.2 is a valid interpretive rule. Accordingly, we reverse the decision of the Kanawha County Circuit Court in Case Number 35299. Furthermore, we affirm the decision of the Kanawha County Circuit Court in Case Number 35300.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Although the legal dispute raised by these consolidated appeals is virtually identical, each case has its own unique factual and procedural history.

### A. Case Number 35299—Mr. Kokochak

David Kokochak (hereinafter "Mr. Kokochak"), the appellee herein and plaintiff below, owns a building in Chester, West Virginia. Mr. Kokochak wishes to lease this building to a tenant who operates licensed video lottery machines. However, because this building is less than 300 feet from a gas station, the building is not an approved location for a video lottery establishment because W. Va. C.S.R. § 179–7–2.2.c requires that a "licensed limited video lottery" establishment

be "at least three hundred feet from a business that sells petroleum products capable of being used as fuel in an internal combustion engine."

In order to challenge the validity of § 179–7–2.2.c, Mr. Kokochak filed a declaratory judgment action in the Circuit Court of Kanawha County. By order entered August 4, 2009, the circuit court granted Mr. Kokochak's motion for summary judgment and determined that § 179–7–2.2.c is an invalid legislative rule. In rendering its ruling, the circuit court concluded

it is clear that Rule 179–7–2.2[.]c does, in fact, "regulate private conduct" and the "exercise of private rights or privileges" and "confers rights or privileges" when it precludes businesses within three hundred feet of a business that sells petroleum products from being a licensed limited video lottery location. No such restriction was made by the legislature. Further, the unambiguous language of West Virginia Code § 29–22B–1201(a) does not give the respondent [the Commission] legislative authority to promulgate a rule relative to distances, but states only that the terminals can be placed only in "licensed … locations approved by the commission."

Further, it is important to note that the West Virginia legislature did, in fact, specifically address the issue of location of limited video lottery retailers in West Virginia Code § 29–22B–1202. It specifically excludes certain locations. As argued by the Respondent in another context, if there is any ambiguity regarding the legislature's intent to exclude particular locations from its prohibition in this statute, the maxim "*expressio unius est exclusio alterius*" applies here. The specific mention (and exclusions) of certain location(s) implies that other locations would not be excluded. The exclusions are not to be accomplished by interpretive rule.

This court finds that West Virginia Code of State Rules, Rule 179–7–2.2[.]c is in fact a "legislative rule" by definition, and not an "interpretive rule." Because said rule was never authorized or approved by the state legislature, it is void and invalid.

(Emphasis in original). From this adverse ruling, the Commission appeals to this Court.

### B. Case Number 35300—The Elks

The Elks currently holds licenses to operate as a private club and to sell beer in the City of Parkersburg, West Virginia. The Elks additionally seeks to obtain a limited video lottery license to permit it to operate licensed video lottery machines at its lodge in downtown Parkersburg, which is located less than 300 feet from two churches, namely Saint Francis Xavier Catholic Church and Trinity Episcopal Church. Therefore, the Elks applied for a limited video lottery license, which application was rejected by the Commission because of the lodge's proximity to the aforementioned churches. In this regard, W. Va.C.S.R. § 179-7-2.2.b requires that a "licensed limited video lottery" establishment be "at least three hundred feet from a church, school, daycare center, or the perimeter of a public park."

Following the denial of its application, the Elks requested the Commission to review its application, which denial was upheld. The Elks then appealed to the Circuit Court of Kanawha County. By order entered June 3, 2009, the circuit court upheld the Commission's decision to deny the Elks a limited video lottery license based upon the restrictions contained in W. Va.C.S.R. § 179-7-2.2.b. In this regard, the circuit court ruled

[f]irst, the Petitioner [the Elks] "has no right to a license or to the granting of the approval sought. Any license issued or other commission approval granted pursuant to the provisions of this article is a revocable privilege and ... [,] [t]he licensing, control and regulation of limited video lottery by the state does not create ... the accrual of any value to the privilege of participation in any limited video lottery activity...." W. Va.Code § 29-22B-203(1) & (2)(D)....

Second, the Limited Video Lottery Act provides that "[v]ideo lottery terminals allowed by this article may be placed only in licensed limited video lottery locations approved by the commission[,]" W. Va.Code § 29-22B-1201(a), but does not detail what a "licensed limited video lottery locations

approved by the commission" is. Under the West Virginia Code, an interpretive rule may be used to establish the conditions for the exercise of exclusive agency discretion. W. Va.Code § 29A-1-2(3) [sic]. "A statute which provides for a thing to be done ... by a prescribed person or tribunal implies that it shall not be done ... by a different person or tribunal; and the maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies to such statute." Syl. Pt. 1, in part, *State ex rel. Battle v. Hereford*, 148 W.Va. 97, 133 S.E.2d 86 (1963). The only body empowered to approve locations is explicitly the Respondent [the Commission]; the exclusive right to approve locations is vested with the Respondent which brings ... Rule 2.2(b) [sic] clearly within the ambit of the agency discretion portion of West Virginia Code § 29A-1-2(3) [sic]. And, in so doing, the interpretive rule is limited only when "such conditions are ... prescribed by statute or by legislative rule[.]" Thus, West Virginia Code § 29A-1-2(c) creates not a negative limitation on agency authority, but imposes ... an affirmative obligation on the Legislature. That is, the Legislature must specifically and explicitly *speak* to create conflict between a positive statute and the interpretive rule to invalidate the interpretive rule—an interpretive rule cannot be invalidated (in the agency discretion sphere at least) by Legislative *silence*. Indeed, the very purpose of administrative agency authority is to provide an agency with the flexibility and authority necessary to protect the public. *Quesenberry v. Estep*, 142 W.Va. 426, 446, 95 S.E.2d 832, 844 (1956).

(Emphasis in original). From this adverse ruling, the Elks appeals to this Court.

### II.

### STANDARD OF REVIEW

■ The sole issue on appeal to this Court concerns the validity of W. Va.C.S.R. § 179-7-2.2. We previously have held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appa-*

*lachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

■ While the central legal issue of the two consolidated cases is the same, the procedural history of each case is different. Insofar as the Commission's appeal in Case Number 35299 is from the circuit court's summary judgment order, we also employ a plenary review to the circuit court's rulings: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ By contrast, the Elks' appeal in Case Number 35300 arises from administrative proceedings, which decision was then appealed to the circuit court. Our review of such rulings is set forth in Syllabus point 1 of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996):

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Mindful of these standards, we proceed to consider the parties' arguments.

### III.

### DISCUSSION

On appeal to this Court, we have been asked to determine whether W. Va.C.S.R. § 179–7–2.2 is a valid interpretive rule or whether it is an invalid legislative rule. We conclude that W. Va.C.S.R. § 179–7–2.2 is a valid interpretive rule.

■ At issue in this proceeding is the validity of a rule promulgated by an administrative agency, namely the West Virginia State Lottery Commission. The Legislature is vested with the authority to delegate rulemaking functions to administrative bodies.

It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority.

Syl. pt. 3, *Rowe v. West Virginia Dep't of Corrs.*, 170 W.Va. 230, 292 S.E.2d 650 (1982). Pursuant to W. Va.Code § 29–22–5(a)(1) (2001) (Repl.Vol.2008), the Legislature has vested the West Virginia State Lottery Commission with the authority to promulgate lottery rules generally:

> (a) The commission has the authority to:
>
> (1) Promulgate rules in accordance with chapter twenty-nine-a [§§ 29A–1–1 et seq.] of this code: Provided, That those rules promulgated by the commission that are necessary to begin the lottery games selected shall be exempted from the provisions of chapter twenty-nine-a of this code in order that the selected games may commence as soon as possible[.]

This authority is echoed, more specifically, in the Limited Video Lottery Act: "Limited video lottery is hereby authorized and may be operated and maintained subject to the provisions of this article. *The limited video lottery authorized by this article, being a lottery, is subject to regulation by the West Virginia Lottery Commission.*" W. Va.Code § 29–22B–102 (2001) (Repl.Vol.2008) (emphasis added). In greater detail, the Legislature has defined the Commission's powers vis-a-vis the Limited Video Lottery Act to include:

> In addition to any other powers and duties set forth in this article or article 22 [§§ 29–22–1 et seq.] of this chapter, *the Lottery Commission has the following powers and duties:*
>
> (1) *To propose legislative rules for promulgation by the Legislature* in accordance with the provisions of article 29A–3–1, et seq., of this code, governing the licensing, conduct, and operation of limited video lottery that may be necessary to carry out the purposes of this article. The director shall prepare and submit to the Lottery Commission written recommendations concerning proposed legislative rules for this purpose;

(2) *To propose other rules for promulgation* as provided in article 29A–3–1, et seq., of this code not inconsistent with this article which the commission in its discretion believes to be necessary. Authority to propose rules includes the authority to propose amendments to rules and to propose repealing rules;

(3) Notwithstanding any other provision of this code to the contrary, proposed legislative rules for this article filed in the state register by the first day of August, 2001, may be filed as emergency rules[.]

W. Va.Code §§ 29–22B–402(1–3) (2001) (Repl.Vol.2008) (emphasis added).

 As a general matter, "[p]rocedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld so long as they are reasonable and do not enlarge, amend or repeal substantive rights created by statute." Syl. pt. 4, *State ex rel. Callaghan v. West Virginia Civil Serv. Comm'n*, 166 W.Va. 117, 273 S.E.2d 72 (1980). In other words,

[a]ny rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

Syl. pt. 4, *Maikotter v. University of West Virginia Bd. of Trs./West Virginia Univ.*, 206 W.Va. 691, 527 S.E.2d 802 (1999). *Accord* Syl. pt. 5, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (" ' "Rules and Regulations of … [an agency] must faithfully reflect the intention of the legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the … [agency's] Rules and Regulations that it has in the statute." Syl. pt. 4, *Ranger Fuel Corp. v. West Virginia Human Rights Commission*, 180 W.Va. 260, 376 S.E.2d 154 (1988).' Syl. pt. 2, in part, *Chico Dairy Company v. Human Rights Commission*, 181 W.Va. 238, 382 S.E.2d 75 (1989).").

██ When determining whether an administrative rule is valid as a proper exercise of an agency's authority, we first must determine whether the subject rule is an interpretive rule or a legislative rule.

In reviewing a rule or regulation of an administrative agency, a West Virginia court must first decide whether the rule is interpretive or legislative. If it is interpretive, a reviewing court is to give it only the deference it commands. If it is a legislative rule, the court first must determine its validity. Assuming its validity, the two-pronged analysis from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), should be applied.

Syl. pt. 2, *Appalachian Power*, 195 W.Va. 573, 466 S.E.2d 424. The Administrative Procedures Act defines an "interpretive rule" as follows:

*"Interpretive rule" means every rule*, as defined in subsection (i) of this section, *adopted by an agency* independently of any delegation of legislative power *which is intended by the agency to provide information or guidance to the public regarding the agency's interpretations*, policy or opinions *upon the law enforced or administered by it and which is not intended by the agency to be determinative of any issue affecting private rights, privileges or interests. An interpretive rule may not be relied upon* to impose a civil or criminal sanction nor *to regulate* private conduct or *the exercise of private rights or privileges nor to confer any right or privilege provided by law* and is not admissible in any administrative or judicial proceeding for such purpose, except where the interpretive rule established the conditions for the exercise of discretionary power as herein provided. However, an interpretive rule is admissible for the purpose of showing that the prior conduct of a person was based on good faith reliance on such rule. The admission of such rule in no way affects any legislative or judicial determination regarding the prospective effect of such rule. Where any provision of this code lawfully commits any decision or determination of fact or judgment to the sole discretion of

any agency or any executive officer or employee, the conditions for the exercise of that discretion, to the extent that such conditions are not prescribed by statute or by legislative rule, may be established by an interpretive rule and such rule is admissible in any administrative or judicial proceeding to prove such conditions[.]

W. Va.Code § 29A–1–2(c) (1982) (Repl.Vol. 2007) (emphasis added). By contrast,

"[l]egislative rule" means every rule, as defined in subsection (i) of this section, proposed or promulgated by an agency pursuant to this chapter. *Legislative rule includes every rule which*, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) *grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule.* Unless lawfully promulgated as an emergency rule, a legislative rule is only a proposal by the agency and has no legal force or effect until promulgated by specific authorization of the legislature. Except where otherwise specifically provided in this code, legislative rule does not include (A) findings or determinations of fact made or reported by an agency, including any such findings and determinations as are required to be made by any agency as a condition precedent to proposal of a rule to the legislature; (B) declaratory rulings issued by an agency pursuant to the provisions of section one, article four of this chapter; (C) orders, as defined in subdivision (e) of this section; or (D) executive orders or proclamations by the governor issued solely in the exercise of executive power, including executive orders issued in the event of a public disaster or emergency[.]

W. Va.Code § 29A–1–2(d) (emphasis added).

■ In promulgating the rule at issue herein, the Commission has denominated W. Va.C.S.R. § 179–7–1, *et seq.*, as a "lottery interpretive rule": "[t]he purpose of this interpretive rule is to disclose how the State Lottery Commission will interpret, clarify and explain provisions of … the Limited Video Lottery Act codified in W. Va.Code § 29–22B–101 et seq. …." W. Va.C.S.R. § 179–7–1.1 (2008). The specific rule in contention, W. Va.C.S.R. § 179–7–2.2, provides, in full, that

2.2. "Licensed limited video lottery location approved by the commission," as the term is found in W. Va.Code § 29–22B–1201(a), means the location in excess of the following straight-line distances from any of the following places:

2.2.a. The location is at least one hundred fifty feet from, or has an external structural connection not amounting to a common internal wall to, a premises that already has a retail license for video lottery terminals;

2.2.b. The location is at least three hundred feet from a church, school, day-care center, or the perimeter of a public park; or

2.2.c. The location is at least three hundred feet from a business that sells petroleum products capable of being used as fuel in an internal combustion engine.

W. Va.Code § 29–22B–1201(a) (2001) (Repl. Vol.2008), to which § 179–7–2.2 refers, provides that "[v]ideo lottery terminals allowed by this article may be placed only in licensed limited video lottery locations approved by the commission." However, other than specifically prohibiting the placement of licensed limited video lottery terminals in state parks, *see* W. Va.Code § 29–22B–1201(e), the statute leaves the phrase "licensed limited video lottery locations approved by the commission" undefined and is silent as to the permitted and prohibited placements of such terminals.

Consistent with the definition of an "interpretive rule" set forth in W. Va.Code § 29A–1–2(c), § 179–7–2.2 provides the Commission's "interpretation[ ]" of the undefined phrase "licensed limited video lottery locations approved by the commission" contained in W. Va.Code § 29–22B–1201(a). By doing so, the Commission not only affords meaning to the use of this phrase in W. Va.Code § 29–22B–1201(a), but § 179–7–2.2 also serves to

"provide ... guidance"[1] regarding the Commission's customary interpretation of this statute, the enforcement with which it has been charged by the Legislature. *See generally* W. Va.Code §§ 29–22B–102 and 29–22B–402. As such, W. Va.C.S.R. § 179–7–2.2 plainly fits the definition of an interpretive rule.

Both Mr. Kokochak and the Elks, however, have advanced numerous arguments to support their contentions that W. Va.C.S.R. § 179–7–2.2 is, instead, a legislative rule that has not been properly adopted through the legislative rule-making process. First, they contend that insofar as § 179–7–2.2 abridges their right to operate a licensed limited video lottery establishment, it is, by definition, a legislative rule. This argument is based primarily upon the parties' reference to other statutes that either regulate different types of licenses[2] or that define other aspects of the limited video lottery system.[3] We find this argument to be without merit.

The Legislature very explicitly has cautioned that a "license to participate in limited video lottery is a privilege," not a right:

The Legislature further finds and declares that:

(1) A person seeking a license or other affirmative lottery commission approval has no right to a license or to the granting of the approval sought. Any license issued or other commission approval granted pursuant to the provisions of this article is a revocable privilege;

(2) The licensing, control and regulation of limited video lottery by the state does not create (A) any property right in a license issued pursuant to this article, (B) any right to transfer or encumber a license, (C) any vested right in a license, or (D) the accrual of any value to the privilege of participation in any limited video lottery activity; and

(3) That the privilege of participation in limited video lottery operations is conditioned upon (A) the proper and continuing individual qualification of an applicant or licensee, and (B) the discharge of the affirmative responsibility of each licensee to provide the regulatory and investigatory authorities with any assistance and information necessary to assure that the policies declared by this article are achieved.

W. Va.Code § 29–22B–203 (2001) (Repl.Vol. 2008). Because there does not exist a right to obtain a limited video lottery license or to operate such an establishment, § 179–7–2.2 cannot abridge a right that does not exist. Insofar as interpretive rules, by definition, may not "be determinative of any issue affecting private rights"[4] or "regulate ... the exercise of private rights or ... confer any right,"[5] it is clear that § 179–7–2.2's clarification of W. Va.Code § 29–22B–1201(a) functions as a valid interpretive rule. Furthermore, each of the statutes relied upon by Mr. Kokochak and the Elks to support their claims of right governs either different licensing requirements[6] or different aspects of the limited video lottery system.[7] None of

---

**1.** W. Va.Code § 29A–1–2(c) (1982) (Repl.Vol. 2007).

**2.** On this point, the Elks contends that its existing licenses, to operate as a private club and to sell alcohol, already impose restrictions upon it vis-a-vis its relationship to nearby churches. With respect to its alcohol sales license, the Elks must be more than 300 feet from a church, when "measured from front door to front door, along the street or streets." W. Va.Code § 11–16–8(a)(5) (1990) (Repl.Vol.2005). Similarly, W. Va. C.S.R. § 175–2–3.2.4.c (2007) limits the location of a private club with respect to churches by requiring that the private club's activities not "adversely affect or interfere with normal, orderly conduct of the affairs of" a church. Nevertheless, the Elks complains that the Legislature, who should be cognizant of these restrictions, did not place any limitations upon distances between licensed limited video lottery establishments and private clubs or those holding alcohol licenses in its recognition that such groups are qualified applicants for limited video lottery licenses. *Citing* W. Va.Code § 29–22B–504(3) (2001) (Repl. Vol.2008).

**3.** Mr. Kokochak bases his argument upon his reading of W. Va.Code § 29–22B–328 (2001) (Repl.Vol.2008), which defines "restricted access adult-only facility"; describes such an establishment as a proper venue for licensed limited video lottery terminals; and provides, in subsection (b), that

[n]otwithstanding the provisions of subsection (a) of this section, it ["restricted access adult-only facility"] does not include a place of business that sells petroleum products in conjunction with the sale of other retail products which may include, but are not limited to, tobacco, alcohol or food products; nor may such place of business establish a separate room or building which is part of, contiguous to, or adjoining the place of business as a restricted access adult-only facility.

**4.** W. Va.Code § 29A–1–2(c).

**5.** *Id.*

**6.** *See* note 2, *supra.*

**7.** *See supra* note 3.

these provisions provides guidance as to the meaning of "licensed limited video lottery locations approved by the commission" contained in W. Va.Code § 29–22B–1201(a) as § 179–7–2.2 does here.

Mr. Kokochak and the Elks additionally suggest that because W. Va.Code § 29–22B–1202(a) (2001) (Repl.Vol.2008) prohibits the granting of "[a] limited video lottery retailer license ... if, at the time of application for the license, the applicant's premises are within one hundred fifty feet of ... a premises that already has a license for video lottery terminals," the Legislature has already spoken on this point, and, accordingly, § 179–7–2.2 is improper because it is inconsistent with this expression of legislative intent. Again, however, we find no merit to the parties' contentions.

Although the proximal distance set forth in W. Va.Code § 29–22B–1202(a) is different than the distances established by W. Va. C.S.R. § 179–7–2.2, the two pronouncements are not inconsistent. In this regard, W. Va. Code § 29–22B–1201 defines *where* licensed video lottery terminals may be placed. Although the Legislature largely left the task of establishing the specific approved locations for licensed video lottery terminals to the Commission, the Legislature nevertheless expressly prohibited their placement in state parks. *See* W. Va.Code § 29–22B–1201(e). The remainder of § 1201 describes the physical characteristics with which licensed limited video lottery establishments are required to conform. By contrast, W. Va.Code § 29–22B–1202 discusses *how* one may be granted a limited video lottery retailer license by creating a condition precedent to the issuance of such a license: licensed limited video lottery establishments are prohibited from being located within 150 feet of one another or within the same structure. *See* W. Va. Code § 29–22B–1202(a). Thus, because § 1201 addresses the *placement* of licensed limited video lottery establishments while § 1202 establishes a *condition* that must be fulfilled before such a license may be granted, the two statutes address two different aspects of the limited video lottery system.

As such, W. Va.C.S.R. § 179–7–2.2, which identifies additional prohibited placements for licensed limited video lottery establishments, is consistent with, and descriptive of, the commands of § 1201 and, as such, is a valid interpretive rule.

In light of the foregoing analysis, we therefore hold that W. Va.C.S.R. § 179–7–2.2 (2008) is a valid interpretive rule adopted by the West Virginia State Lottery Commission to define the phrase "licensed limited video lottery location approved by the commission," as that phrase is used in W. Va.Code § 29–22B–1201(a) (2001) (Repl.Vol.2008). Because a limited video lottery license is not a right, the regulation at issue herein cannot be construed to be a legislative rule abridging individual rights. Moreover, because the aforementioned phrase was left undefined by the Legislature, the Commission properly promulgated the subject interpretive rule to provide guidance as to the Commission's interpretation of this term. Accordingly, we reverse the decision of the Kanawha County Circuit Court in Case Number 35299, wherein the court ruled that W. Va.C.S.R. § 179–7–2.2 is an invalid legislative rule. Furthermore, we affirm the decision of the Kanawha County Circuit Court in Case Number 35300, wherein the court ruled that W. Va.C.S.R. § 179–7–2.2 is a valid interpretive rule.

## IV.

### CONCLUSION

For the foregoing reasons, we conclude that W. Va.C.S.R. § 179–7–2.2 is a valid interpretive rule. Accordingly, in Case Number 35299, the August 4, 2009, decision of the Circuit Court of Kanawha County is hereby reversed. Furthermore, in Case Number 35300, the June 3, 2009, decision of the Circuit Court of Kanawha County is hereby affirmed.

Case Number 35299—Reversed.

Case Number 35300—Affirmed.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

BENJAMIN, Justice, dissenting.

(Filed July 12, 2010)

W. Va. C.S.R. § 179–7–2.2 does not interpret a law enacted by the Legislature. Rather, it is a stand-alone rule wholly created by the Lottery Commission for the purpose of determining a person's privilege to operate a limited video lottery. Consequently, § 179–7–2.2 is not a valid interpretive rule. Moreover, because the rule was not promulgated by specific authorization of the Legislature, it is not a valid legislative rule. Therefore, this Court should have found § 179–7–2.2 to be invalid. Because the majority held to the contrary, I respectfully dissent.

According to W. Va. Code § 29A–1–2(c) (1982), in pertinent part:

"Interpretive rule" means every rule . . . adopted by an agency independently of any delegation of legislative power which is intended by the agency to provide information or guidance to the public regarding the agency's interpretations, policy or opinions upon the law enforced or administered by it and which is not intended by the agency to be determinative of any issue affecting private rights, privileges or interests. An interpretive rule may not be relied upon to impose a civil or criminal sanction nor to regulate private conduct or the exercise of private rights or privileges nor to confer any right or privilege provided by law[.]

A "Legislative rule," on the other hand, is a rule which, in relevant part, "when promulgated after or pursuant to authorization of the Legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule." W. Va. Code § 29A–1–2(d). It is clear that C.S.R. § 179–7–2.2 is not an interpretive rule because it denies the benefit of operating a video lottery establishment within three hundred feet of a business that sells petroleum products.

In its opinion, the majority quotes the definitions for interpretive and legislative rules set forth above, but then disregards the operative language of these definitions in its analysis. The majority concludes that "[i]n-

sofar as interpretive rules, by definition, may not 'be determinative of any issue affecting private rights' or 'regulate . . . the exercise of private rights or . . . confer any right,' it is clear that § 179–7–2.2's clarification of W. Va. Code § 29–22B–1201(a) functions as a valid interpretive rule." Op. at 192–193 (*quoting* W. Va. Code § 29A–1–2(c)) (footnotes omitted) (ellipses in originally). The majority bases this conclusion on the fact that "there does not exist a right to obtain a limited video lottery license or to operate such an establishment[.]" Op. at 192.

However, the majority omits significant language from the statutory definition of "interpretive rule" which compels a different conclusion than that arrived at by the majority. According to W. Va. Code § 29A–1–2(c), an "Interpretive rule" may not "be determinative of any issue affecting private rights, *privileges or interests*" or "regulate *private conduct* or the exercise of private rights *or privileges* nor to confer any right *or privilege* provided by law[.]" (Italics added). Plainly, interpretive rules may not be determinative of or confer a privilege provide by law.

The majority correctly indicates that a "license to participate in limited video lottery is a privilege." Op. at 192. It cannot seriously be denied that the rule at issue is determinative of who receives the privilege of operating a limited video lottery. Specifically, the rule denies a limited video license to an establishment located within three hundred feet of a business that sells petroleum products. As a result, § 179–7–2.2 is not an interpretive rule pursuant to the express definition of an interpretive rule in W. Va. Code § 29A–1–2(c). Further, § 179–7–2.2 is not a valid legistative rule because it was not promulgated by specific authorization of the Legislature pursuant to W. Va. Code § 29A–1–2(d). Having determined that § 179–7–2.2 is neither a valid interpretive rule nor a valid legislative rule, I must conclude that the rule has no legal force and effect. For this reason, I respectfully dissent to the majority opinon.