767 S.E.2d 267

**Gregory GRIM, et al., Plaintiffs Below, Petitioners**

v.

**EASTERN ELECTRIC, LLC, Defendant Below, Respondent.**

No. 13–1133.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 2014.

Decided Nov. 3, 2014.

Concurring and Dissenting Opinion of Chief Justice Davis Nov. 7, 2014.

Concurring Opinion of Justice Benjamin Nov. 25, 2014.

Vincent Trivelli, Esq., The Law Office of Vincent Trivelli, PLLC, Morgantown, WV, for Petitioners and Amicus Curiae, West Virginia State Building and Construction Trades Council, AFL–CIO.

Joseph U. Leonoro, Esq., Steptoe & Johnson, PLLC, Charleston, WV, for Respondent.

WORKMAN, Justice:

Petitioners, former workers on a public works project, filed this civil action to recover statutory wages and liquidated damages

under the Prevailing Wage Act[1] and Wage Payment and Collection Act[2] from the contractor on the project, Eastern Electric, LLC ("Eastern Electric"). Petitioners appeal an order entered October 7, 2013, by the Circuit Court of Kanawha County granting summary judgment in favor of Eastern Electric. On appeal to this Court, petitioners argue the circuit court erred in its holdings under these laws and failed to follow the appropriate standard regarding summary judgment determinations. This case presents the following questions: (1) what is the statute of limitations in a Prevailing Wage Act claim; (2) whether summary judgment was appropriate on the issue of Eastern Electric's "honest mistake or error" affirmative defense; and (3) whether the circuit court was correct to dismiss petitioners' Wage Payment and Collection Act claims.[3]

After a careful review of the briefs, appendix record, and consideration of the arguments of the parties, we hold the circuit court erred in dismissing petitioners' Prevailing Wage Act claims as untimely because the statute of limitations applicable to those claims is five years. We find the record establishes disputed issues of material fact with regard to Eastern Electric's "honest mistake or error" affirmative defense, rendering the circuit court's entry of summary judgment erroneous. Finally, we affirm the circuit court in its dismissal of petitioners' Wage Payment and Collection Act claims. We therefore affirm, in part, reverse, in part, and remand the case for further proceedings.[4]

## I. FACTUAL AND PROCEDURAL HISTORY

Eastern Electric is an electrical contractor. Petitioners are seven electricians who were employed by Eastern Electric on several public works projects for the State of West Virginia in and around the City of Charles-ton. Petitioners filed the instant action alleging violations of West Virginia Code §§ 21-5A-1 to -10 ("Prevailing Wage Act" or "PWA"), and West Virginia Code §§ 21-5-1 to -18 ("Wage Payment Collection Act" or "WPCA"). The parties dispute whether the PWA applied to the specific contract at issue—a contract Eastern Electric entered into with the West Virginia Department of Administration in 2007. Petitioners performed electrical construction work pursuant to this contract at several government buildings including the State Capitol and the Governor's mansion. Work on this contract began in May of 2007, and with the renewal of the contract in 2008, continued through May of 2009.

Throughout the term of this contract, Eastern Electric performed electrical work on a variety of projects at various State-owned facilities. Each project was given to Eastern Electric on a purchase order or work order. Upon completion or partial completion of a job or project, the lead electrician, Petitioner Gregory Grim, completed an installation/service report, which was usually approved and signed by the Department of Administration official in charge of that particular building or location. Thereafter, Eastern Electric sent the invoice to the Department of Administration. Each invoice contained a brief description of the work performed, the number of hours spent to perform the work, and material costs. The appendix record submitted to this Court includes a generous sampling of those documents; the work is repeatedly described as demolishing existing wiring, lighting and receptacles and installing new. In their deposition testimony, petitioners also describe the work performed pursuant to the contract as demolishing electrical systems in various office spaces to install new systems.

---

1. West Virginia Code §§ 21-5A-1 to -10 (2013).

2. West Virginia Code §§ 21-5-1 to -18 (2013).

3. Petitioners advance six different assignments of error. On review, we find the case presents three issues for resolution. *See Evans v. Holt*, 193 W.Va. 578, n. 2, 457 S.E.2d 515, n. 2 (1995) (consolidating redundant assignments of error);

*Robertson v. B.A. Mullican Lumber & Mfg. Co., L.P.*, 208 W.Va. 1, n. 1, 537 S.E.2d 317, n. 1 (2000) (combining five errors into two).

4. We wish to acknowledge the amicus curiae brief filed by the West Virginia State Building and Construction Trades Council, AFL-CIO, in support of petitioners' position.

Petitioners were paid timely under the terms of their employment agreements, but they were not paid prevailing wages. Petitioners performed identical work for Eastern Electric on other public works construction projects during this same time period and were paid prevailing wages.[5] Petitioners asked members of Eastern Electric about this discrepancy and they were told that prevailing wages were not paid because it was a maintenance contract.

The Request for Quotation ("RFQ") for this contract was entitled "Electrical Construction, Maintenance and Repair." The RFQ indicated the contract was "to provide electrical construction, maintenance, and repair services to a variety of equipment housed in numerous Department of Administration owned facilities located throughout West Virginia[.]" The term "construction" was defined within the RFQ as: "work associated with the addition, removal, or re-location of electrical circuits[.]" When Eastern Electric submitted its bid for this contract, it did so at non-prevailing wage rates.[6] Eastern Electric's bid was accepted and it entered into the contract with the Department of Administration. The contract did not specify that prevailing wages were applicable to the work being performed, and did not include the general boilerplate language[7] usually included in prevailing wage contracts.[8]

In February of 2009, the West Virginia Division of Labor commenced an investigation with regard to some of the work performed pursuant to the contract and determined that Eastern Electric should have paid prevailing wages to the workers. The investigation began with work performed on State Building 74, a three-story building. Petitioners removed all of the existing wiring and lighting, as well as all the existing receptacles and switches in the building. After this demolition was complete, petitioners installed new conduit, wiring, lighting, receptacles and switches on all three floors. The Division of Labor issued a letter to Eastern Electric

5. In his deposition, Petitioner Grim testified that his weekly time sheets for the period April 2007 through May 2007 show that he worked several days on a project for Eastern Electric on the White Sulphur Springs Fire Department, a public entity, and received prevailing wages. That work consisted of running conduit, pulling wire and installing lighting and receptacles. Mr. Grim also testified that he worked on other public improvement construction jobs for Eastern Electric, including the Summersville Municipal Building and a high school in Princeton, and received prevailing wages.

6. Michael Harlow, one of Eastern Electric's members, testified in his deposition that when he was preparing the bid for this contract, he contacted the purchasing division to inquire whether prevailing wages would be applicable. Mr. Harlow testified that Krista Ferrell, a senior buyer with the purchasing division, explained that prevailing wages would not apply. However, Ms. Ferrell testified in her deposition that she could not recall this conversation.

Eastern Electric asserted it also relied on an e-mail confirmation from David Parsons, Operations and Maintenance Manager of the Department of Administration's General Services Division, that prevailing wages did not apply to this contract. In his deposition, Mr. Parsons confirmed that he e-mailed Eastern Electric's business manager, Kristin Moore, and stated that prevailing wages did not apply. In his deposition, Mr. Parsons explained that he consulted no one in making this comment and he did so based only on his "general feeling." Mr. Parsons also testified that he was not responsible for making the determination regarding payment of prevailing wages.

7. According to deposition testimony of the two State witnesses, the State uses the following language in contracts when prevailing wages apply:

WAGE RATES: THE CONTRACTOR OR SUBCONTRACTOR SHALL PAY THE HIGHER OF THE U.S. DEPARTMENT OF LABOR MINIMUM WAGE RATES AS ESTABLISHED FOR KANAWHA COUNTY, PURSUANT TO WEST VIRGINIA CODE 21–5A, ET SEQ., (PREVAILING WAGE RATES APPLY TO THIS PROJECT).

8. Petitioners rely on the general compliance language on the back of every page of the purchase order for the contract at issue which provided: "Compliance: Seller shall comply with all Federal, State and local laws regulations and ordinances including, but not limited to, the prevailing wage rates of the WV Division of Labor." We do not find that language alone mandates the application of prevailing wages within the meaning of West Virginia Code § 21–5A–6. Significantly, the Division of Labor's investigator, Frank Jordan, noted the absence of the mandatory prevailing wage language when he conducted his investigation and determined the language should have been included in this contract. Furthermore, a prevailing wage schedule was not incorporated into the bid documents or the contract. See W.Va.Code § 21–5A–3.

dated August 6, 2009, and stated that an audit revealed that Eastern Electric failed to pay proper prevailing wages for work performed on State Building 74.[9] The results of that investigation were reflected in an audit that found the workers were owed prevailing wages in the amount of $135,330 for work performed just on that particular project. The letter advised Eastern Electric that if it did not agree with the audit findings, it could contest those findings under the provisions of the State Administrative Procedures Act. *See* West Virginia Code § 29A–5–1 (2002).[10] Eastern Electric contested those findings but for reasons not clear from the record, the Division of Labor did not schedule this matter for an administrative hearing.

After learning of the investigation by the Division of Labor, Eastern Electric, with the assistance of counsel, contacted the Department of Administration regarding this issue. A meeting was held between members of Eastern Electric, its counsel, the Department of Administration's general counsel, and other officials from the Department of Administration. Eastern Electric contends that during the course of that meeting, the Department of Administration reassured Eastern Electric that the work performed pursuant to the contract was not subject to prevailing wages.[11]

Recognizing that it would lose money if it had to pay prevailing wages to its employees, Eastern Electric cancelled the contract. Petitioners last performed work under this contract in May of 2009. Petitioners filed this civil action in July of 2011. In the pleadings below, petitioners estimate their damages at $275,000 in lost wages and fringe benefits on all the various jobs performed under the contract.

Following discovery, the parties submitted cross-motions for summary judgment. Peti-

tioners argued it was uncontested that the electrical construction work performed by them was construction work within the meaning of the PWA and that Eastern Electric failed to pay wages and fringe benefits due under the PWA. Conversely, Eastern Electric maintained: (1) petitioners' PWA claims were barred by the two-year statute of limitations set forth in West Virginia Code § 55–5–12 (2008); (2) Eastern Electric's failure to pay prevailing wages was an "honest mistake or error;" and (3) petitioners had no cause of action under the WPCA. By order entered October 7, 2013, the circuit court granted Eastern Electric's motion for summary judgment. Petitioners appeal this order.

## II. STANDARD OF REVIEW

■ The issue before us is whether Eastern Electric is entitled to summary judgment as to petitioners' claims. An order granting summary judgment engenders plenary review. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ In this case, the circuit court was presented with cross-motions for summary judgment. Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963); Syl. Pt. 2, *Consolidation Coal Co. v. Boston Old Colony Ins. Co.*, 203 W.Va. 385, 390, 508 S.E.2d 102, 107 (1998). In making this ruling, " 'the judge must view the evidence presented through the prism of the substantive eviden-

9. After the audit was complete on State Building 74, the Division of Labor continued its investigation to the other job sites. In his deposition, Mr. Jordan stated he believed Eastern Electric's employees should have been paid prevailing wages for all the work performed pursuant to this contract.

10. West Virginia Code 29A–5–1(a) provides, in part, that "[i]n any contested case all parties shall be afforded an opportunity for hearing[.]"

11. The Court notes that representatives with the Division of Labor were conspicuously absent from this meeting even though the State Commissioner of Labor has the statutory authority to conduct investigations of PWA violations and may impose a civil penalty to any contractor or subcontractor who willfully and knowingly violates any provision of the PWA. *See* W.Va.Code § 21–5A–9.

tiary burden.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 62, 459 S.E.2d 329, 339 (1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In cases of substantial doubt, the safer course of action is to deny the motion and to proceed to trial." 194 W.Va. at 59, 459 S.E.2d at 336.

## III. DISCUSSION

### A. Petitioners' Prevailing Wage Act Claims

It should be noted at the outset that there has been no definitive determination whether the work performed under the contract should have been subject to prevailing wages. Because the circuit court granted summary judgment in favor of Eastern Electric, the matter did not proceed to trial on this fundamental question. We therefore address the legal issues raised on appeal without taking an opinion of whether petitioners were owed prevailing wages.

#### 1. Statute of Limitations

We are first asked to determine the applicable statute of limitations in a civil action brought pursuant to the PWA. The PWA ensures that workers engaged in constructing public improvements receive an hourly wage at least as high as the prevailing hourly wage for similar workers in the same locality where construction is performed.[12] W.Va. Code § 21–5A–2; *see also Affiliated Constr. Trades Found. v. Univ. of W.Va. Bd. of Trs.*, 210 W.Va. 456, 466, 557 S.E.2d 863, 873 (2001) (defining the law's purpose as protecting workers from substandard wages). The law explicitly provides a private cause of action for workers who were not paid prevailing wages on a public improvement construction project.[13] W.Va.Code § 21–5A–9(b).

■ The PWA does not contain an express time limitation for the filing of a civil action. Petitioners urged the circuit court to adopt a three-year statute of limitations, set forth in the Division of Labor's regulations, which provide:

> (g) The contract shall provide that the contractor and each subcontractor shall post for the entire period of construction the wage determination decisions of the Commissioner in a prominent and easily accessible place or places as the site for the work. The posted notice of wage rates must contain the following information:
>
> . . . .
>
> (5) A statement advising workmen that if they have been paid less than the fair minimum wage rate for their job classification or that the contractor and/or subcontractor or subcontractors are not complying with the Act or these regulations in any manner whatsoever may recover from such contractor and/or subcontractor(s) the difference between the same and the posted fair minimum wage rate of wages, and in addition thereto a penalty equal in amount to such difference and a reasonable attorney's fee. *The limitation to such civil action by the workman is a period of three (3) years and venue of such action shall be in the county where the work is performed.*

W.Va.C.S.R. 42 § 7–3.1(g)(5) (2005) (emphasis added).

The circuit court rejected the proposition that this regulation is controlling because the only reference to a possible three-year statute of limitations is within a posted notice requirement for contractors. The circuit court also found the Division of Labor lacked statutory authority to promulgate a statute of limitations in the PWA. Upon our review,

---

12. The PWA applies to contracts involving "the construction of a public improvement." W.Va. Code § 21–5A–3. The PWA defines a "public improvement" as "buildings, roads, highways, bridges ... and all other structures upon which construction may be let to contract by the State of West Virginia or any political subdivision thereof." W.Va.Code § 21–5A–1(4). To qualify under the PWA, however, the contract must not only involve a "public improvement" but also must involve the "construction of" a public improvement. W.Va.Code § 21–5A–2. The PWA defines "construction" as "any construction, reconstruction, improvement, enlargement, painting, decorating, or repair of any public improvement let to contract." W.Va.Code § 21–5A–1(2).

13. Not only can workers recover the difference between the rate the worker was paid and the posted prevailing wage, but also a statutory penalty equal to the difference, and reasonable attorney fees. W.Va.Code § 21–5A–9(b).

we find no fault with the circuit court's reasoning on this issue.

■ The Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, "an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority." *Kokochak v. W.Va. State Lottery Comm'n*, 225 W.Va. 614, 618, 695 S.E.2d 185, 189 (2010) (quoting Syl. Pt. 3, *Rowe v. W.Va. Dept. of Corr.*, 170 W.Va. 230, 292 S.E.2d 650 (1982)). Unlike many provisions of chapter 21 of the West Virginia Code, the Legislature did not delegate to the Division of Labor the authority to promulgate rules and regulations to interpret the PWA.[14] Rather, the authorization is limited to establishing prevailing wage rates for the localities of the State. *See* W.Va.Code § 21–5A–3 and § 21–5A–5.

■ In syllabus point two of *West Virginia Health Care Cost Review Authority v. Boone Memorial Hospital*, 196 W.Va. 326, 472 S.E.2d 411 (1996), we held that:

> Once a disputed regulation is legislatively approved, it has the force of a statute itself. Being an act of the West Virginia Legislature, it is entitled to more than mere deference; it is entitled to controlling weight. As authorized by legislation, a legislative rule should be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious.

We agree with the circuit court that the regulation does not establish the controlling statute of limitations in this case because the Division of Labor lacked the statutory authority to promulgate a statute of limitation for a PWA action.

The circuit court determined that petitioners' cause of action under the PWA was subject to the two-year limitation period set forth in West Virginia Code § 55–2–12,[15] the general statute of limitations for a personal or property injury tort claim.

■ When the Legislature creates a statutory cause of action without including a limitations provision, this Court will apply the general limitations provision which governs the nature of that action. We therefore must determine if petitioners' claims sound in tort or contract. The determination of what statute of limitations applies turns on the nature of the injuries generally identified with the specific cause of action. Applying this test, we concluded in *McCourt v. Oneida Coal Co., Inc.*, 188 W.Va. 647, 425 S.E.2d 602 (1992), that a private cause of action under the West Virginia Human Rights Act, West Virginia Code §§ 5–11–1 to –20 (2013), sounded in tort and therefore West Virginia Code § 55–2–12 established the two-year statute of limitation period. 188 W.Va. at 650, 425 S.E.2d at 605. In *McCourt*, the plaintiff filed a sexual discrimination action and alleged economic injury as well as personal injury—mental and emotional distress, anxiety, depression, loss of self-confidence and respect. In *McCourt*, the plaintiff's husband also filed a claim for loss of consortium which supported our finding that the action sounded in tort. *Id.; see generally, State ex rel. Small v. Clawges*, 231 W.Va. 301, 310, 745 S.E.2d 192, 201 (2013) (discussing derivative nature of loss of consortium claim and holding when husband asserts such claim, he must establish tortfeasor was liable for tort claim of physically injured wife).

This Court conducted a similar analysis when determining the applicable statute of limitations in a WPCA claim when the statute did not specifically provide for one. In *Lucas v. Moore*, 172 W.Va. 101, 303 S.E.2d

---

**14.** In contrast to the PWA, in the WPCA, the Legislature specifically provided that "[t]he commissioner [of the Division of Labor] shall make rules and regulations to the extent necessary to effectuate the purposes of this article, in accordance with the provisions of chapter twenty-nine A of the Code of West Virginia, as amended." W.Va.Code § 21–5–13.

**15.** West Virginia Code § 55–2–12 provides, in pertinent part:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]

739 (1983), we held the five-year statute of limitations set forth in West Virginia § 55–2–6 (2008) for actions upon an implied contract applied to a WPCA action to collect wages and statutory damages. 172 W.Va. at 102, 303 S.E.2d at 741. We reasoned that "[a]lthough the statute is not drafted with great precision, we feel the legislature intended discharged employees to have access to this statutory remedy as if under contract." *Id.*

 Turning to petitioners' PWA claims, our starting point is the text of West Virginia Code § 21–5A–2, which is the source of a contractor's obligation to pay prevailing wages on public works construction projects. That subsection provides, in part:

> It is hereby declared to be the policy of the State of West Virginia that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in this State in which the construction is performed, shall be paid to all workmen employed by or on behalf of any public authority engaged in the construction of public improvements.

*Id.* In syllabus point nine of *State ex rel. Tucker Co. Solid Waste Auth. v. W.Va. Div. of Labor,* 222 W.Va. 588, 668 S.E.2d 217 (2008), this Court held: "W.Va.Code § 21–5A–2 ... requires the prevailing wage to be paid to all workmen who are employed 'on behalf of any public authority' and who are 'engaged in the construction of public improvements.' " [16] The right of workers to receive prevailing wages is strictly a matter of statutory authorization. The injury that flows from a violation of the PWA is purely economic; the only damages a worker may recover is the difference between the rate he or she was paid and the posted prevailing wage, a statutory penalty equal to the difference, and reasonable attorney's fees. W.Va. Code § 21–5A–9.

We therefore find that the circuit court erred in applying the two-year statute of

limitations set forth in West Virginia Code § 55–2–12 in this case because the PWA claims are not personal or property injury tort claims. *See Star Furniture Co. v. Pulaski Furniture Co.,* 171 W.Va. 79, 83, 297 S.E.2d 854, 859 (1982) ("Tort law traditionally has been concerned with compensating for physical injury to person or property.").

Similarly, when resolving this issue, the New Jersey Superior Court held that actions brought under New Jersey's prevailing wage act were subject to a six-year limitations period for breach of contract and tort claims for economic harm, rather than a two-year limitations period applicable to injury to the person. *Troise v. Extel Comm., Inc.,* 345 N.J.Super. 231, 784 A.2d 748, 752 (2001). We find this holding persuasive considering the nature of a PWA claim. This statutory cause of action flows from the work performed on a public works construction project let to contract. Absent that contract, a worker would have no PWA claim. Accordingly, we find that a PWA sounds in contract.

Therefore, in the absence of a legislative directive to apply another more specific limitations provision, we hold that a private cause of action under the Prevailing Wage Act, West Virginia Code § 21–5A–9(b) (2013), is subject to the five-year statute of limitations period provided for in West Virginia § 55–2–6 (2008) for actions upon an implied contract.

Applying this holding to the facts of the instant case, we find petitioners' PWA claims were timely filed. Petitioners last performed work under this contract in May of 2009, and they filed this civil action in July of 2011. Accordingly, we reverse the circuit court's decision insofar as it dismissed the claims as time barred.

### 2. The "Honest Mistake or Error" Affirmative Defense

Eastern Electric argues that its failure to pay petitioners the prevailing wage for this

---

**16.** Not all workers on public work construction projects are covered by the PWA. Applying the plain language of the statute, this Court has held that the terms "employee" and "workman," as used in the PWA,

> do not include workers who are (1) employed or hired by a public authority on a regular

basis, (2) employed or hired by a public authority on a temporary basis, (3) employed or hired by a public authority to perform temporary repairs, or (4) employed or hired by a public authority to perform emergency repairs. Syl. Pt. 8, in part, *Tucker Co. Solid Waste Auth.,* 222 W.Va. 588, 668 S.E.2d 217.

work was the result of an "honest mistake or error," which is an affirmative defense under the PWA. More specifically, the PWA provides that "an honest mistake or error shall not be construed as a basis for recovery under this subsection." W.Va.Code § 21–5A–9(b). Eastern Electric asserts the circuit court properly applied the affirmative defense in granting summary judgment because the contract did not require the payment of prevailing wages and State officials made representations that prevailing wages were not applicable.

Petitioners respond that the circuit court failed to provide them the benefit of all inferences that can be drawn from the evidence submitted. Petitioners maintain that viewing the evidence in the light most favorable to them, one could reasonably conclude that Eastern Electric knew of its obligation to pay prevailing wages for the work performed under the contract because it has extensive experience as a public works contractor. Petitioners allege Eastern Electric knowingly submitted a low bid to obtain the work by undercutting other bidders and shifting the losses onto the workers.

"As a general matter, our cases have permitted the burden of persuasion to shift to the defendant when the defendant alleges an affirmative defense." *Mayhew v. Mayhew,* 205 W.Va. 490, 498 n. 18, 519 S.E.2d 188, 196 n. 18 (1999). *See, e.g., Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 479 S.E.2d 561 (1996) (undue hardship is affirmative defense upon which defendant bears burden of persuasion); *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981) (burden of proof shifts

to defendant on issue of contributory negligence). Because Eastern Electric has the burden of proof on this issue, it is entitled to summary judgment on this affirmative defense only if the evidence is so strong that it would be entitled to a directed verdict at trial. *Williams,* 194 W.Va. at 52 n. 17, 459 S.E.2d at 329 n. 17 (1995). "This burden is very heavy and summary judgment rarely is granted in favor of the party having the burden of proof." *Id.*

The "honest mistake or error" defense is unique to West Virginia in the context of a prevailing wage statute. Consequently, the caselaw from other jurisdictions that provide a private right of action for non-payment of prevailing wages offers little guidance in resolving whether the "honest mistake or error" defense applies in this case.[17] For the most part, the caselaw cited by the parties focuses on the related issue of whether a contractor can be held liable in a civil action for non-payment of prevailing wages on a public improvement construction contract when the public authority fails to include prevailing wage specifications in the contract. Because we find that issue to be tangentially instructive, we will briefly discuss it before addressing the "honest mistake or error" affirmative defense set forth in our PWA.

The PWA provides that when a public authority wishes to contract for construction of a public works project, it must contact the State Commissioner of Labor and obtain the appropriate wage rates for each type of worker needed to complete the job before advertising for bids. *See* W.Va.Code § 21–5A–3.[18] After the Commissioner of Labor

**17.** Likewise, the federal caselaw is not beneficial to our analysis because most federal courts have found no implied private right of action accruing to those employees whose rights are guaranteed by the Davis–Bacon Act, 40 U.S.C. § 276a to 276a–5 ·(1994). *See, e.g., United States ex rel. Glynn v. Capeletti Bros.,* 621 F.2d 1309 (5th Cir. 1980); *Weber v. Heat Control Co.,* 579 F.Supp. 346 (D.N.J.1982), *aff'd,* 728 F.2d 599 (3rd Cir. 1984), *but see McDaniel v. Univ. of Chicago,* 548 F.2d 689 (7th Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978); *Norling v. Valley Contracting and Pre–Mix,* 773 F.Supp. 186 (D.N.D.1991). In *Univs. Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 776, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981), the United States Supreme Court addressed whether the Davis–

Bacon Act confers a private right of action on individuals. The case involved a construction contract that was administratively determined not to call for Davis–Bacon work and the Supreme Court held that no private right of action exists in such cases. *Id.* However, the *Coutu* Court specifically declined to "decide whether the Act creates an implied private right of action" where the contract in question contains Davis–Bacon Act stipulations. *Id.* at 769, 101 S.Ct. 1451. In any event, the Davis–Bacon Act does not provide an "honest mistake or error" affirmative defense to contractors.

**18.** West Virginia Code 21–5A–3 provides, in part:
Any public authority authorized to let to contract the construction of a public improve-

provides it with a prevailing wage schedule, the public authority must incorporate the schedule into its bid documents so that contractors bidding on the project are aware of the wage rates and may properly estimate their labor costs. *Id.* Once the contract is awarded, the prevailing wage schedule must also be incorporated into the construction contract itself. *Id.* It is imperative that the public authority adhere to these requirements so that the contractor may know in advance of submitting its bid what the appropriate labor costs will be. As previously discussed, these statutory requirements were not followed with respect to the contract presently at issue. Unlike the contractor, however, the public authority faces no civil penalties for violations of the PWA. *See* W.Va.Code § 21–5A–9(a).[19]

In support of its argument that it is not liable to petitioners for the non-payment of prevailing wages, Eastern Electric relies on *Cullipher v. Weatherby–Godbe Corp.*, 570 S.W.2d 161 (Tex.App.1978). In that case, electricians sought to recover from their employer the difference between the prevailing wage rate and the compensation they were paid for work performed on behalf of a public authority. *Id.* at 164. The court in *Culli-pher* concluded that because the contract did not include the prevailing wage specifications as required by statute, the employees could not recover those wages. *Id.*

■ We find *Cullipher* to be easily distinguishable from the case at hand. The court held the Texas statute specifically provided that the prevailing wage rate must be incorporated into the contract as a prerequisite to the statutory right of employees to recover. By comparison, West Virginia's PWA does not include such a prerequisite to recovery, nor has this Court ever imposed one. Indeed, we are mindful that to so hold could effectively abolish the PWA because a public authority could elect not to incorporate prevailing wage requirements into a contract in order to save money, leaving workers without a remedy.[20]

■ We are persuaded by the holding in *Ohio Asphalt Paving, Inc. v. Ohio Dept. of Indus. Rel.*, 63 Ohio St.3d 512, 589 N.E.2d 35, 38 (1992), that "[s]imply because the public authority failed in its duty to fix the prevailing wage rates within the contracts in issue does not mean that the contractor is excused from its statutory duty of ensuring

---

ment, shall, before advertising for bids for the construction thereof, ascertain from the state commissioner of labor, the fair minimum rate of wages, including fair minimum overtime and holiday pay, to be paid by the successful bidder to the laborers, workmen or mechanics in the various branches or classes of the construction to be performed; and such schedule of wages shall be made a part of the specifications for the construction and shall be published in an electronic or other medium and incorporated in the bidding blanks by reference when approved by the Commissioner of Labor where the construction is to be performed by contract.

19. West Virginia Code § 21–5A–9(a) provides the following penalties for violation of the PWA: "Any contractor or subcontractor who wilfully [sic] and knowingly violates any provision of this article shall be fined not less than fifty nor more than two hundred and fifty dollars."

20. We are cognizant that the public authority and the contractor may have strong financial incentives not to comply with the PWA. *See generally Lusardi Constr. Co. v. Labor Comm'n*, 1 Cal.4th 976, 4 Cal.Rptr.2d 837, 824 P.2d 643, 654 (1992) ("Contractors that do not pay the prevailing wage to their workers enjoy a compet-itive advantage over contractors that do, and may be preferred by local government agencies for public works projects, because the construction dollar will purchase more when a contractor paying less than the prevailing wage is selected."). Faced with budget constraints, the public authority may attempt to undertake public works construction projects in such a way as to avoid the application of the PWA. In such circumstances, a contractor may have a cause of action for indemnity against the public authority if the contractor is held liable for prevailing wage act violations. *See Ohio Asphalt Paving, Inc. v. Ohio Dep't of Indus. Rel.*, 63 Ohio St.3d 512, 589 N.E.2d 35, 39 (1992) ("[A] contractor may maintain a cause of action in contribution where the facts underlying a particular public improvement contract indicate culpability on the part of the public authority for failing to comply with the prevailing wage provisions. In our view, equity and fairness demand such a remedy.").

The contract in the instant case, however, contained an indemnification clause whereby Eastern Electric agreed to "hold harmless" the State from any claims or losses in connection with the performance of the contract, including any failure to "observe State and Federal laws, including but not limited to labor and wage laws."

compliance." [21] We feel constrained to interpret the West Virginia PWA in a similar fashion to prohibit the clear intent of the statute from being violated. Therefore, we find the omission of prevailing wage specifications in the contract is not fatal to petitioners' PWA claims; the PWA's coverage is determined exclusively by the statute as it applies to the facts. *See* Syl. Pt. 9, *Tucker,* 222 W.Va. 588, 668 S.E.2d 217; *Barnett v. Commtec/Pomeroy Computer Res., Inc.,* 439 F.Supp.2d 598, 600 n. 1 (S.D.W.Va.2006) (dismissing defendant's argument that without inclusion of statutorily mandated provisions, contract cannot be covered by PWA and holding "[w]hether the contract contains these provisions has no bearing on PWA coverage."); *Affiliated Constr. Trades Found. v. Univ. of W.Va. Bd. of Trs.,* 210 W.Va. at 468, 557 S.E.2d at 875 ("the examining court must look behind the mere paperwork to examine a host of factors in determining the applicability of the wage act in any given case.").

Turning to a contractor's defense in a prevailing wage civil action, the parties rely upon *Lusardi Construction Company v. Labor Commissioner,* 1 Cal.4th 976, 4 Cal. Rptr.2d 837, 824 P.2d 643 (1992), wherein the contractor asserted that it was not responsible for the non-payment of prevailing wages because the public authority failed to notify it that prevailing wages were applicable to the work performed. The Supreme Court of California rejected this argument and held that the contractor, Lusardi, was liable for the non-payment of prevailing wages. 4 Cal. Rptr.2d 837, 824 P.2d at 649. The court recognized the statutory obligation of a contractor on a public works project to pay its employees the prevailing wage may be imposed on the contractor independent of any contractual provisions." *Id.*[22] Citing equity concerns, the court fashioned a remedy based on the contractor's good faith belief that prevailing wage rates did not apply to hold that it was not liable for any additional statutory penalties. The court explained that "substantial justice would not be achieved" by applying statutory penalties when the contractor acted in good faith and on the express representations of a governmental entity. *Id.,* 4 Cal.Rptr.2d 837, 824 P.2d at 655.

■ Unlike the California statute, however, the West Virginia PWA is more favorable to the contractor. Our PWA expressly relieves a contractor from *all* liability where failure to pay prevailing wages was due to an "honest mistake or error." Consequently, this Court lacks flexibility in fashioning a remedy like the court did in *Lusardi.* Rather, we must hold that the Prevailing Wage Act, West Virginia Code § 21–5A–9(b) (2013), provides that "an honest mistake or error shall not be construed as a basis for recovery under this subsection." Therefore, when a contractor or subcontractor can demonstrate that its failure to pay prevailing wages to workers on a public improvement construction project was due to an "honest mistake or error," there is no basis for recovery.

---

**21.** Though instructive with regard to whether a contractor is required to pay the prevailing wage even when it is not specifically provided for in a public improvement construction project, we recognize that *Ohio Asphalt Paving* is of no benefit to interpreting the "honest mistake or error" affirmative defense. The Ohio statute does not contain an analogous affirmative defense. *See* Ohio Rev.Code Ann. § 4115 (2011).

**22.** In *Lusardi,* the court reasoned:

As noted above, sections 1773.2, 1775, 1776, subdivision (g), and 1777.5 [of California's prevailing wage law, Lab.Code, §§ 1720–1861] generally require the contracting public entity, either through specifications in the notice for bids or by stipulations in any resulting contract, to notify the contractor of the applicability of the prevailing wage law and the possibili-

ty of penalties and forfeitures in the event of noncompliance. Lusardi contends that these statutes reflect a legislative intent that the prevailing wage laws are enforceable only when a provision requiring their observance is contained in the contract between the public agency and the contractor. We disagree.

Lusardi's proposed interpretation violates section 1771, which provides that "[e]xcept for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages ... *shall be paid* to all workers employed on public works." (Italics added.) By its express language, this statutory requirement is not limited to those workers whose employers have contractually agreed to pay the prevailing wage; it applies to "*all* workers employed on public works." (Italics added.)

824 P.2d at 654.

We now turn to the precise issue before the Court of whether summary judgment was appropriate on Eastern Electric's "honest mistake or error" affirmative defense. This case presents an issue of first impression with regard to the application of this affirmative defense in a PWA claim. When presented with a matter of statutory interpretation, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630, 474 S.E.2d 554, 560 (1996) (internal quotations, citation, and footnote omitted). Therefore, where the language is plain, we do not interpret the statute, but rather apply the statute as written. " 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997).

We find the language of the statute to be clear and without ambiguity. Therefore, we accept its plain meaning without resorting to the rules of interpretation. Black's Law Dictionary defines "honest mistake" as "[a] mistake made unintentionally." Black's Law Dictionary 1153 (10th ed.2014). The term "error" is synonymous with "mistake." Black's Law Dictionary 659 (10th ed.2014).[23] Applying the plain meaning of these terms, we find. the kind of "honest mistake or error" that would relieve a contractor of liability under the PWA would be a situation in which the contractor's mistake was unintentional.

With that said, however, the "honest mistake or error" defense was not intended to be applied in such a way as to reward a contractor who feigns ignorance in order to avoid paying prevailing wages when required by law, or who otherwise proverbially sticks his head into the sand on this issue. To the contrary, this affirmative defense is available only to contractors who act in good faith but make honest mistakes or errors. Public works contractors should be careful to ascertain they are in compliance with the PWA and should inquire whether the public authority complied with its statutory duties to consult with the Division of Labor. If a contractor is told by any State agency official that the work to be performed is not subject to the prevailing wage law, as it is asserted occurred here, it would be well-advised to ascertain that the person who is making that representation has the authority to do so and that it be well-documented. "This is consistent with the general rule that those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Community Health Serv.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The cost of defending a PWA claim alone should provide sufficient incentive for a conscientious contractor to contact the Division of Labor if it is uncertain whether prevailing wages are required under the contract up for bid.

Therefore, the issue of whether a contractor made an "honest mistake or error" within the meaning of the Prevailing Wage Act, West Virginia Code § 21–5A–9(b), must be determined by a thorough examination of all the facts and circumstances, as well as the concepts outlined above. In addition, the circuit court may consider any other relevant factor, including but not limited to: whether the contractor had experience with public work construction projects governed by the Prevailing Wage Act; whether the mistake was due to clerical or mathematical errors; whether there was a genuine misunderstanding after due diligence by the contractor regarding whether the Prevailing

---

**23.** Beyond dictionary definitions, the terms "honest mistake" and "error" have been applied to determine when the low bidder on a public improvement construction project can rescind its bid. *See e.g., James Cape & Sons Com. v. Mulcahy*, 285 Wis.2d 200, 700 N.W.2d 243, 249 (2005) (finding contractor entitled to withdraw bid when it discovered mathematical error due to failure to add last-minute change from subcontractor); *Miss. State Bldg. Comm'n v. Becknell Const., Inc.*, 329 So.2d 57, 62 (Miss.1976) (observing bidder made an honest mistake in bid, and promptly notified public body of mistake; bidder permitted to withdraw bid without penalty).

Wage Act applied to the type of work performed; and whether the contractor made any real analysis of whether the work to be performed under the contract was the type subject to prevailing wage.

■ Determining whether an honest mistake or error occurred in this case requires fact-finding. Accordingly, we find that the circuit court erred by granting summary judgment in favor of Eastern Electric on this affirmative defense. This issue is remanded to the circuit court for further proceedings consistent with this opinion.

## B. Petitioners' Wage Payment and Collection Act Claims

Petitioners also brought an action pursuant to the WPCA. The circuit court dismissed those claims based on the finding that the PWA was petitioners' exclusive remedy, and that damages an employee can recover under the PWA do not constitute wages within the meaning of the WPCA.[24] Petitioners assert the circuit court clearly erred because they filed WPCA claims in an effort to recover wages, not damages. After careful review of the appendix record submitted to this Court, we affirm the circuit court's dismissal of petitioners' WPCA claims, but disagree with the reasoning.

■ With only a few exceptions, the WPCA applies to all employees in West Virginia and provides rights and remedies with regard to payment of wages.[25] W.Va.Code § 21–5–3. The WPCA requires an employer to pay its employees regularly while employed, and in full at the separation of employment. W.Va.Code §§ 21–5–3 and 21–5–4. Unlike the PWA, the WPCA does not create a right to compensation; rather it merely provides a statutory vehicle for employees to recover agreed-upon, earned wages from an employer. W.Va.Code § 21–5–3; *Robertson v. Opequon Motors, Inc.*, 205 W.Va. 560, 566, 519 S.E.2d 843, 849 (1999). " 'The West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly *withheld.*' Syllabus, *Mullins v. Venable*, 171 W.Va. 92, 297 S.E.2d 866 (1982)." Syl. Pt. 3, *Jones et al. v. Tri–County Growers, Inc.*, 179 W.Va. 218, 366 S.E.2d 726 (1988) (emphasis added).

■ The WPCA explicitly provides a private cause of action and statutory remedy when the employer breaches its obligation to pay earned wages. *Id.*[26] Notably, the WPCA *"does not establish a particular rate of pay,* instead, it controls the manner in which employees in West Virginia are paid wages and it imposes on employers an obligation to pay employees' wages in a timely manner." *Gregory v. Forest River, Inc.*, 369 Fed.Appx. 464, 465 (4th Cir.2010) (internal quotations and citations omitted) (unpublished decision) (emphasis added). The *amount* of wages payable to an employee pursuant to the provisions of the WPCA is determined exclusively by the terms of the employment agreement. *See* Syl. Pt. 5, *Ad-*

---

24. In its order, the circuit court cited *Conrad v. Charles Town Races, Inc.*, 206 W.Va. 45, 521 S.E.2d 537 (1999), and *Taylor v. Mutual Mining, Inc.*, 209 W.Va. 32, 543 S.E.2d 313 (2000). In *Conrad*, we concluded that back pay awarded under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101–2109, did not constitute wages for purpose of the WPCA. 206 W.Va. at 50, 521 S.E.2d at 542. In *Taylor*, we found that a Mine Safety and Health Administration award of back pay and benefits and an arbitrator's award of reinstatement plus back pay were awards of damages and were not wages for purposes of the WPCA. 209 W.Va. at 37, 543 S.E.2d at 318.

25. Under the WPCA, "employee" is defined to include "any person suffered or permitted to work by a person, firm or corporation." W.Va. Code § 21–5–1(b). "Wages" are defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation[.]" W.Va.Code § 21–5–1(c). Lastly, an "employer" is defined as "any person, firm or corporation employing any employee." W.Va. Code § 21–5–1(m).

26. West Virginia Code § 21–5–4(e), provides, in part: "If a person, firm or corporation fails to pay an employee wages as required under this section, the person, firm or corporation shall, in addition to the amount which was unpaid when due, is liable to the employee for three times that unpaid amount as liquidated damages." In a WPCA claim, attorney fees may be awarded but are not mandatory. *See* W.Va.Code § 21–5–12(b); Syl. Pt. 3, *Farley v. Zapata Coal Corp.*, 167 W.Va. 630, 281 S.E.2d 238 (1981).

kins v. Am. Mine Research, Inc., 234 W.Va. 328, 765 S.E.2d 217 (2014) ("The determination as to whether 'wages,' as defined in West Virginia Code § 21–5–1(c) (2013 Repl. Vol.), are payable pursuant to the requirements of West Virginia Code § 21–5–1 et seq. (2013 Repl. Vol.) is governed by the terms of the employment agreement, whether written or in the form of a consistently applied unwritten policy."); Meadows v. Wal–Mart Stores, Inc., 207 W.Va. 203, 530 S.E.2d 676 (1999) (finding employment agreement between parties governs in determining whether specific fringe benefits/wages are earned and thus due under WPCA); Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir.1990) ("The contract between the parties governs in determining whether specific wages are earned.").

We emphasize that petitioners' independent rights to both contractual wages and statutory prevailing wages emanate from different sources, as do the mechanisms for recovery of such wages. Straight-time wages (above the minimum wage) are a matter of private contract or agreement between the employer and employee. Entitlement to prevailing wages, on the other hand, is mandated by the PWA and is based on an important public policy. W.Va.Code § 21–5A–2. The duty to pay prevailing wages is a statutory duty imposed by the State; it is not a matter left to the private discretion of the employer.

In this case, petitioners attempt to bootstrap a WPCA claim to the statutory remedies provided by the PWA by obtusely contending they were not paid "wages due." However, as made clear above, the WPCA merely provides a statutory mechanism to recover "compensation wrongly withheld." Syl., Mullins, 171 W.Va. 92, 297 S.E.2d 866. Petitioners herein do not contend that their contractual wages were wrongly "withheld" or that their agreed-upon wages were not paid timely. Rather, the gravamen of petitioners' complaint is that the agreed-upon wages were in violation of the PWA; there-

fore, their remedy for this violation lies within the PWA. The WPCA creates no right to prevailing wages. See, e.g., Barton v. Creasey Co. of Clarksburg, 900 F.2d 249, *2 (4th Cir.1990) (unpublished), cert. denied, 498 U.S. 849, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990) (recognizing WPCA provides procedures and remedies to facilitate collection of wages but it does not "grant any entitlements to pay or wages[.]").

In syllabus point six of Williams, 194 W.Va. 52, 459 S.E.2d 329 (1995), we held:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Therefore, we find that the circuit court properly dismissed petitioners' WPCA claims.[27]

## IV. CONCLUSION

For the reasons set forth above, the October 7, 2013, order of the Circuit Court of Kanawha County is affirmed, in part; reversed, in part; and this action is remanded for further proceedings.

Affirmed, in part; reversed, in part; and remanded.

Chief Justice DAVIS concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

Justice BENJAMIN concurs and reserves the right to file a separate opinion.

DAVIS, Chief Justice, concurring, in part, and dissenting, in part:

(Filed Nov. 7, 2014)

While I agree with the majority's resolution of the issues in the case sub judice pertaining to the West Virginia Prevailing Wage Act,[1] I disagree with the majority's

---

27. We leave open the question of whether a worker can pursue both a PWA claim and a WPCA claim where the contractor has both the contractual and statutory obligation to pay pre-

vailing wages on a public works construction project but fails to do so.

1. W. Va.Code § 21–5A–1 et seq.

final conclusion that the petitioners herein are foreclosed from pursuing their claims seeking damages under the West Virginia Wage Payment and Collection Act.[2] The Prevailing Wage Act and the Wage Payment and Collection Act serve two distinct purposes. Therefore, because each of these Acts provides a prescribed measure of damages for a violation of its provisions, it is clear that the petitioners are entitled to, and should have been permitted to, seek recovery of both of these independent statutory remedies. From the majority's contrary conclusion, I respectfully dissent.

In its decision of this case, the majority correctly concluded that the petitioners may pursue their claim for damages provided by the Prevailing Wage Act. The Legislature has stated the purpose of the Prevailing Wage Act to be as follows:

> It is hereby declared to be the policy of the State of West Virginia that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in this State in which the construction is performed, shall be paid to all workmen employed by or on behalf of any public authority engaged in the construction of public improvements.

W. Va.Code § 21–5A–2 (1961) (Repl. Vol. 2013). This Court also has recognized that "W. Va.Code § 21–5A–2 (1961) (Repl. Vol. 2002) requires the prevailing wage to be paid to all workmen who are employed 'on behalf of any public authority' and who are 'engaged in the construction of public improvements.'" Syl. pt. 9, in part, *State ex rel. Tucker Cnty. Solid Waste Auth. v. West Virginia Div. of Labor,* 222 W.Va. 588, 668 S.E.2d 217 (2008). *Accord* Syl. pt. 4, Majority op.[3] To achieve this goal, the Prevailing Wage Act permits an aggrieved employee to pursue an action for damages occasioned by the employer's failure to pay the prevailing wage:

> Any skilled laborer, workman or mechanic who is engaged in construction on a public improvement let to contract, who is paid less than the posted fair minimum rate of wages applicable thereto, may recover from such contractor or subcontractor the difference between the same and the posted fair minimum rate of wages, and in addition thereto, a penalty equal in amount to such difference, and reasonable attorney fees. The venue of said action shall be in the county where the work is performed: Provided, however, That an honest mistake or error shall not be construed as a basis for recovery under this subsection.

W. Va.Code § 21–5A–9(b) (1961) (Repl. Vol. 2013). In rendering its ruling, the majority correctly determined that the petitioners may pursue these remedies afforded by the Prevailing Wage Act.

Despite this decision, the majority then forbade the petitioners from seeking recompense for the income they lost as a result of Eastern Electric's alleged violation of the Wage Payment and Collection Act. This result is patently unjust because the two Acts serve *different* legislative purposes and provide *separate* remedies for the *distinct* injuries recognized by each statutory scheme. Unlike the Prevailing Wage Act, which requires employers of employees constructing public improvements to pay a specific minimum wage, W. Va.Code § 21–5A–2, the Wage Payment and Collection Act requires employers to pay their employees by a date certain for the work the employees have performed, W. Va.Code § 21–5–3(a) (2008) (Repl. Vol. 2013). Pursuant to W. Va.Code § 21–5–3(a),

> [e]very person, firm or corporation doing business in this State, except railroad companies as provided in section one of this article, shall settle with its employees at least once in every two weeks, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services.

In recognition of the purpose of this Act, this Court has stated that "[t]he West Virginia

---

**2.** W. Va.Code § 21–5–1 *et seq.*

**3.** *See also Thomas v. A.G. Elec., Inc.,* 304 S.W.3d 179, 183 (Mo.Ct.App.2009) (acknowledging that the prevailing wage act "is intended to ensure that workers on public projects be paid reasonable wages" (internal quotations and citations omitted)).

Wage Payment and Collection Act is *remedial* legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." *Mullins v. Venable,* 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982) (emphasis added; citation omitted). *Accord* Syl. pt. 7, Majority op.[4] As a remedial statute, the Wage Payment and Collection Act should be construed liberally to facilitate its accomplishment of its stated purpose: requiring employers to timely compensate their employees for work performed. *See State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995) ("Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended." (citations omitted)).

To realize the Wage Payment and Collection Act's requirement that employees be timely paid for work performed for their employers, the Act specifically permits an aggrieved employee to bring an enforcement action against his/her employer:

> (a) Any person whose wages have not been paid in accord with this article ... may bring any legal action necessary to collect a claim under this article....

W. Va.Code § 21–5–12(a) (1975) (Repl. Vol. 2013). Additionally, W. Va.Code § 21–5–4(e) (2013) (Repl. Vol. 2013) details the specific remedies that are available to an employee whose employer has not paid him/her in accordance with the Wage Payment and Collection Act:

> If a person, firm or corporation fails to pay an employee wages as required under this section, the person, firm or corporation, in addition to the amount which was unpaid when due, is liable to the employee for three times that unpaid amount as liquidated damages. Every employee shall have a lien and all other rights and remedies for the protection and enforcement of his or her salary or wages, as he or she would have been entitled to had he or she rendered service therefor in the manner as

last employed; except that, for the purpose of liquidated damages, the failure shall not be deemed to continue after the date of the filing of a petition in bankruptcy with respect to the employer if he or she is adjudicated bankrupt upon the petition.

*See also* W. Va.Code § 21–5–6 (1981) (Repl. Vol. 2013) ("If any person, firm or corporation shall refuse for the period of five days to settle with and pay any of its employees at the intervals of time as provided in section three [§ 21–5–3] of this article, or to provide fringe benefits after the same are due, ... and suit be brought for the amount overdue and unpaid, judgment for the amount of such claim proven to be due and unpaid, with legal interest thereon until paid, shall be rendered in favor of the plaintiff in such action[.]"); W. Va.Code § 21–5–12(b) ("The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant...."). In spite of the liberal construction to be afforded to this Act, the majority expressly, and wrongly, prohibited the petitioners from seeking recompense thereunder.

Insofar as the petitioners seek damages regarding their employer's failure to pay them the wages they claim they were entitled to receive, the petitioners should have been permitted to pursue the statutory remedies provided by the two legislative enactments applicable to their claims: W. Va.Code § 21–5A–9(b) of the Prevailing Wage Act *and* W. Va.Code § 21–5–12(a) and W. Va.Code § 21–5–4(e) of the Wage Payment and Collection Act. While these two routes of redress are similar to the extent that they both ensure that employees receive the compensation that they legitimately have earned, these two statutory provisions nevertheless are very different in the specific types of compensation they address and the remedies they provide to aggrieved employees. Thus, to

---

**4.** *See also Lipsitt v. Plaud,* 466 Mass. 240, 245, 994 N.E.2d 777, 783 (2013) (recognizing that "[t]he purpose of the Wage Act is to prevent the unreasonable detention of wages" and that "[t]he Wage Act was intended and designed to protect

wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages" (internal quotations and citations omitted)).

the extent that the petitioners claim that they should have been paid wages that they were not paid, whether under the Prevailing Wage Act or pursuant to the Wage Payment and Collection Act, they should have been permitted to pursue both of their sources of recovery. Whether the petitioners may also have individual contractual remedies against their employer should not foreclose their ability to pursue the relief expressly provided to them by the Legislature in these two separate statutory schemes. Moreover, such a course is not without precedent given that many courts have permitted an aggrieved employee to simultaneously pursue remedies provided by both prevailing wage statutes and wage and hour laws. *See, e.g., Gurung v. Malhotra,* 851 F.Supp.2d 583 (S.D.N.Y. 2012) (pursuing claims under prevailing wage law and FLSA); *Gomez v. Rossi Concrete, Inc.,* 270 F.R.D. 579 (S.D.Cal.2010) (pursuing claims under prevailing wage law, FLSA, and ERISA); *Sobczak v. AWL Indus., Inc.,* 540 F.Supp.2d 354 (E.D.N.Y.2007) (pursuing claims under prevailing wage law and FLSA); *Takacs v. A.G. Edwards & Sons, Inc.,* 444 F.Supp.2d 1100 (S.D.Cal.2006) (pursuing claims for prevailing wage and unpaid wages); *Commissioner of Labor v. C.J.M. Servs., Inc.,* 268 Conn. 283, 842 A.2d 1124 (2004) (pursuing claims for prevailing wages and overtime wages). *See also Stampco Constr. Co., Inc. v. Guffey,* 572 N.E.2d 510 (Ind.Ct.App.1991) (pursuing claims for prevailing wages under Indiana state law and federal Davis–Bacon Act).

In reaching its discordant decision, the majority of this Court not only has failed to appreciate the liberal construction to be afforded to the Wage Payment and Collection Act but also has expressly forbidden the petitioners herein to seek recompense provided by that Act's statutory remedies. Ac-

cordingly, I concur in the majority's resolution of the issues regarding the Prevailing Wage Act, but I respectfully dissent from its rejection of the petitioners' claims under the Wage Payment and Collection Act.

### BENJAMIN, Justice, concurring:

(Filed Nov. 25, 2014)

I completely agree with the majority decision. I write separately to emphasize the fact noted in the majority opinion that the petitioners performed identical work for Eastern Electric on other public works construction projects during the same period at issue in this case and were paid prevailing wages. When the petitioners questioned members of Eastern Electric about this discrepancy, they were informed that prevailing wages were not paid in the instant case because it was termed a "maintenance contract" by the executive branch. Significantly, the payment of prevailing wages cannot be based solely on the executive branch's characterization of the work to be done pursuant to a contract.[1] Further, also as stated by the majority, a contractor cannot be permitted to blindly accept the representation of a government agent regarding the non-applicability of the Prevailing Wage Act to a specific project. In those instances where the Prevailing Act is applicable, both the government agent and the contractor must act in good faith so that the purpose of the Prevailing Act will be achieved.

---

1. *See generally State v. Sigler,* 224 W.Va. 608, 687 S.E.2d 391 (2009), wherein this Court looked beyond the characterization which law enforcement chose to use to describe a particular traffic stop and instead held that the actual effect of the stop determined its character and thus, the law applicable to such a stop. In *Sigler,* law enforcement could not avoid the constitutional require-

ments which attach to a sobriety checkpoint simply by instead calling it a "safety checkpoint." To allow the executive branch to avoid the effect of constitutional and statutory law be resorting to self-serving characterizations would contravene West Virginia laws and the rights which attach thereto.